UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 1:17-cr-133-CLC-SKL |
| v. | ) | |
| | ) | Judge Collier |
| DERRICK MCKINNEY, | ) | |
| | ) | |
| *Defendant*. | ) | |

# **M E M O R A N D U M**

Before the Court is Defendant Derrick McKinney's motion to suppress evidence obtained during a traffic stop and subsequent interrogation. (Doc. 41.) Defendant asserts that his rights under the Fourth and Fifth Amendments to the United States Constitution have been violated. (*Id.* at 4.) The motion was referred for a Report and Recommendation ("R&R") by Magistrate Judge Susan K. Lee pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Judge Lee held an evidentiary hearing on the matter on June 13, 2018, and issued an R&R on the motion, recommending Defendant's motion be denied. (Doc. 52.) Defendant filed timely objections to the R&R on June 12, 2018 (Doc. 53)[1] and the Government filed a response (Doc. 54). Defendant later filed a revised version of objections nearly identical to Defendant's initial filing, with the exception of added references to the transcript of the suppression hearing. (Doc. 56.) For the following reasons, the Court will

---

[1] Defendant titled this document as an "appeal" as opposed to a set of objections as outlined in 28 U.S.C. § 636(b)(1)(C). This error was not addressed by the Government, nor does it otherwise appear to have an effect on the substance of Defendant's arguments contained therein. (*See* Doc. 56.)

**ACCEPT** and **ADOPT** the R&R (Doc. 52). Defendant's motion to suppress (Doc. 41) will be **DENIED**.

## I. STANDARD OF REVIEW

This Court is statutorily required to conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require this Court to rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980). Instead, the Court acknowledges that the Magistrate Judge, as factfinder, had the best opportunity to observe testimony and assess the demeanor of witnesses on the stand. *See id.* at 681 n.7; *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002). As a result, the Magistrate Judge's assessment of witness testimony and credibility is entitled to deference before this Court. *See United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## II. FACTUAL BACKGROUND

On August 31, 2017, Defendant became the subject of a traffic stop initiated by Chattanooga Police Department ("CPD") Officer Celtain Batterson. Defendant was charged the same day with a tag light violation, driving on a revoked license, and unlawful possession of a weapon.

### A. Traffic Stop

After stopping Defendant's vehicle for a tag light violation, Batterson approached the driver side of the vehicle and saw that Defendant was the driver of the vehicle. Three other passengers were also present. Batterson recognized Defendant and some of the passengers as gang members. Batterson had previously arrested Defendant and knew that he did not have a valid driver's license. Upon his initial contact with Defendant, Batterson smelled an odor he recognized to be marijuana coming from the vehicle. Batterson asked for Defendant's driver's license. In

2

response, Defendant admitted to driving without a driver's license. Batterson obtained identification from the car's occupants and went to his patrol car to run further checks. Batterson learned from his dispatcher that Defendant was the subject of a Georgia arrest warrant.

Although Batterson had not requested backup, other officers began to arrive as backup almost immediately. Before any of the statements at issue were made, five backup officers, including a canine unit, arrived at the scene. Batterson then decided to deploy the canine unit before searching the car, and before arresting Defendant for driving without a license or arresting Defendant on the outstanding Georgia arrest warrant. Because the vehicle had to be empty in order to deploy the canine unit for safety reasons, Batterson and the other officers began to remove the occupants of the car.

For officer safety reasons, Batterson elected to remove each occupant one at a time. Batterson called Defendant out of the car first and had him lean against Batterson's own patrol car as Batterson patted down the outside of Defendant's clothes. Batterson asked if Defendant had any dangerous weapons on him. He then asked Defendant about the last time someone had weed in his (Defendant's) car. Defendant responded that he had smoked marijuana earlier. Batterson then asked how long ago, and Defendant admitted "about an hour ago." Batterson told Defendant to put his hands behind his back because Defendant was being detained, but not arrested, at the time. Batterson placed handcuffs on Defendant and Defendant sat on the hood of the patrol car.

When the vehicle was empty, the canine unit was deployed to conduct a dog sniff. The sniff, however, is not visible in the recording of the stop and the parties dispute whether the dog signaled the presence of drugs. The recording indicates that after the dog sniff, the dog handler inaudibly said something to Batterson who then said, "nothing in the car," after which Defendant said, "I told you there was nothing in the car."

Batterson and another officer began to search the car, finding a pistol and cash under the center console. As soon as the gun was located, Batterson directed all occupants of the car to be placed in handcuffs. A small bag of marijuana was found in the car shortly thereafter. Batterson requested the canine handler to send him a completed form about the dog's "hit" on the vehicle.

After finding the firearm, Batterson arrested Defendant, who was still in handcuffs, and advised him of his *Miranda* rights. Defendant indicated that he understood his rights. Batterson then questioned Defendant about ownership and possession of the gun. Defendant claimed the firearm and identified it as black and brown. Defendant then loudly announced to the occupants of the car that he had claimed ownership of the gun and indicated that they should get a lawyer. Batterson then told Defendant, "me and you are going to talk again," stopped questioning Defendant, and placed him in the back of his patrol car.

B.    **Hamilton County Jail Interview**

Defendant was taken to the Hamilton County Jail for booking. Batterson and Defendant had to wait for an interview/booking room to open up at the Sheriff's Department adjacent to the jail. During this wait, Batterson and Defendant remained together. Batterson told Defendant that he (Batterson) had to complete a CPD form anytime he made an arrest involving "guns or dope." Once a booking room became available, Batterson took Defendant, who was no longer in handcuffs, into the booking room.

In the booking room, Batterson asked Defendant questions listed on the CPD form without again advising Defendant of his *Miranda* rights. Three hours and thirty-six minutes passed between when Defendant received his initial *Miranda* advisement and waived his rights at the

traffic stop and when his interrogation without a re-advisement of his *Miranda* rights took place.[2]

Batterson first questioned Defendant regarding his involvement with the Bounty Hunter Bloods gang and Defendant stated he was no longer active. Batterson then questioned Defendant using a CPD "Firearms Related Arrests Form." Defendant denied knowing the make, model, or caliber of the firearm, denied knowing if the firearm was loaded, and denied knowing how many rounds were in the firearm. After approximately seventeen minutes, Defendant said he had a bill of sale for the firearm but refused to identify the seller. Defendant then asked if he brought the bill of sale with him to court if he could "get my gun back." He also said the firearm was "special" to him because of who he got it from. After approximately nineteen minutes, Defendant admitted that he smoked marijuana on the day of his arrest. After approximately twenty minutes, Defendant said he got the gun about two years ago, but when Batterson attempted to narrow down a time frame, Defendant said he got the firearm around June 2017. After twenty-four minutes, Defendant admitted he had smoked marijuana every single day since he was approximately ten or eleven years old. Defendant then asked if the form used was a new type of form. Batterson ultimately completed the form with Defendant's responses and Defendant signed it, the interrogation lasting approximately twenty-five minutes.

C.  **Evidentiary Hearing**

Defendant later moved to suppress (1) his admission of smoking marijuana earlier in the evening before being given *Miranda* warnings; (2) evidence obtained from the search of his

---

[2] The Government (Doc. 46 at 4) as well as Defendant (Doc. 49 at 6) stated that this time period was approximately three and one-half hours before the Magistrate Judge. The Magistrate Judge observed in her R&R that the parties agreed that that amount of time passed. (Doc. 52 at 6.) In Defendant's objections before this Court, Defendant states that approximately three hours and thirteen minutes passed between Defendant's advisement of his *Miranda* rights and the jailhouse questioning. (Doc. 56 at 22). This Court finds the initial, agreed-upon time period accurate according to the transcript of the suppression hearing. (Doc. 55 at 51, ¶¶ 1-11.)

5

vehicle; and (3) statements made at the Hamilton County Jail. At an evidentiary hearing on Defendant's Motion to Suppress, the Government called the sole witness, Batterson. Batterson testified that he had asked Defendant when was the last time someone had weed in his car so Defendant could explain the smell of his vehicle. He testified that he equated the question to asking a driver suspected of driving under the influence if he had been drinking. In regard to questions about the dog sniff, Batterson emphatically testified that the dog-handling officer signaled to him that the dog alerted to the odor of drugs in the car. In regard to the statement by Batterson saying, "nothing in the car," Batterson testified he was not talking to the handler, but was instead talking to Defendant and sarcastically repeating "nothing in the car?" because the dog did alert as to drugs in the vehicle.

Defendant proffered information from a Court-ordered mental evaluation of Defendant previously conducted pursuant to 18 U.S.C. §§ 4241 and 4247 in regard to Defendant's competency to stand trial. (Doc. 31.) In the forensic evaluation report (Doc. 40), the evaluators noted that Defendant was competent to stand trial, but that he claimed a tenth grade education. The results indicated an IQ of 67, which falls in the extremely low intellectual range. (Doc. 40 at 5.) The report also stated that Defendant was not fully engaged during testing and, as a result, the evaluators opined that the results may underestimate Defendant's true cognitive function. (Doc. 40 at 6.)

## III. ANALYSIS

Defendant objects to the Magistrate Judge's findings regarding three sets of statements: (1) Defendant's admission to having smoked marijuana prior to having received *Miranda* warnings; (2) Defendant's admission to owning the firearm at issue at the scene of the traffic stop after having been given *Miranda* warnings; and (3) Defendant's statements at the Hamilton County

6

Jail. Defendant also objects to the Magistrate Judge's findings regarding the search of Defendant's vehicle.

### A. Arguments Regarding the Sufficiency of Defendant's Objections

As a preliminary matter, the Government submits that Defendant raises no new issues in his objections and does not attack the reasoning in the R&R. (Doc. 54.) The Government argues that because Defendant "simply asks this Court to disagree with the Magistrate Judge's ruling" and because the R&R "properly resolved all the issues the defendant has raised," Defendant's motion should be denied without further inquiry. (Doc. 54.) The Government's arguments are well founded.

Vague, general or conclusory objections are inadequate to challenge the findings in a magistrate judge's report and recommendation. *Fields v. Lapeer 71-A Dist. Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001). For example, the Court of Appeals for the Sixth Circuit has found it insufficient to raise a conclusory, one-sentence objection to a report and recommendation addressing Eighth Amendment claims, *Thaddeus-X v. Wozniak*, 215 F.3d 1327, at *3 (6th Cir. 2000) (table), or to use paragraphs from a stock objection form without referring to persons and documents involved in the case at hand, *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991). An objection that accomplishes "nothing more than stat[ing] a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used" in the context here. *Daniels v. Colvin*, 3:14-cv-546, 2016 WL 792416, at *1 (E.D. Tenn. Feb. 29, 2016) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)). The Court may treat objections which amount to disagreements with the magistrate judge or which merely restate previous arguments as waived. *Daniels*, 2016 WL 792416, at *1.

Because Defendant's arguments are largely duplicative of those presented before the Magistrate Judge, this Court could elect to treat Defendant's objections as waived. (*Compare* Doc. 49 *with* Doc. 56.) However, Defendant's lengthy brief does assess legal issues involved in Defendant's case in a far more developed manner than cases where a party's objections were found inadequate. *See Fields*, 2 F. App'x at 482-83; *Howard*, 932 F.2d at 508-09. In addition, the Court of Appeals for the Sixth Circuit has recognized that the rule regarding objections to a report and recommendation is not harsh or inflexible, but is one which "may be relaxed in the interests of justice." *Clanton v. People of City of E. Lansing*, 86 F.3d 1155, 1155 (6th Cir. 1996). Thus, this Court has additionally conducted a substantive review of Defendant's claims, but ultimately finds them to be without merit.

### B. Statements

#### 1. Pre-*Miranda* Statement at the Traffic Stop

Defendant argues his admission to smoking marijuana earlier in the evening should be suppressed as it was improperly elicited by means of custodial interrogation prior to having been given *Miranda* warnings. (Doc. 56 at 9.) The Magistrate Judge properly denied Defendant's motion to suppress this statement, as Defendant was not in custody when the statement was elicited.

The Fifth Amendment provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In interpreting this amendment, the Supreme Court has determined that criminal suspects must be apprised of certain rights by means of a *Miranda* warning prior to being subjected to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *United States v. Ray*, 803 F.3d 224, 266 n.12 (6th Cir. 2015).

A routine traffic stop is not considered "custodial" such that a *Miranda* warning must be given to a suspect prior to the asking of any questions. *Berkermer v. McCarty*, 468 U.S. 420, 439-40 (1984). Rather, the Court has described a routine traffic stop as akin to a stop under *Terry v. Ohio*, 392 U.S. 1 (1968), where officers may briefly detain a person for investigative purposes on the basis of reasonable suspicion. *United States v. Young*, 707 F.3d 598, 603 (6th Cir. 2012). In the course of a traffic stop, officers are permitted to ask the suspect a moderate number of questions to determine the person's identity and to try and obtain information confirming or dispelling their suspicions. *United States v. Thomas*, 142 F. App'x 896, 899-900 (6th Cir. 2005). During this period of time, the suspect is not free to leave. *Id.* Indeed, "the very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights." *Id.*

There are instances, however, where a roadside interrogation can become "custodial" such that *Miranda* warnings are required before interrogation takes place. *Id.* The Court of Appeals for the Sixth Circuit looks to "the totality of the circumstances to determine how a reasonable man in the suspect's position would have understood the situation," with the "ultimate inquiry" focused on "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Swanson*, 341 F.3d 524, 528-29 (6th Cir. 2003). Relevant considerations include:

(1) the purpose of the questioning;

(2) whether the place of the questioning was hostile or coercive;

(3) the length of the questioning; and

(4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of

movement during questioning; and whether the suspect initiated contact with the police or acquiesced to their requests to answer some questions.

*United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010). Police and courts must "examine all of the circumstances surrounding the interrogation," including those that may affect how a reasonable person in the suspect's position would perceive his freedom to leave. *Stansbury v. California*, 511 U.S. 318, 322 (1994).

The Magistrate Judge correctly assessed all of the above factors in determining that the stop of Defendant's vehicle did not cross the line between a *Terry* stop and a custodial arrest such that *Miranda* warnings would be necessary before interrogation. (Doc. 52.)

During the interaction, Batterson called Defendant out of the car and had him lean against Batterson's patrol car as Batterson frisked the outside of Defendant's clothes. Batterson asked Defendant about the last time someone had weed in his (Defendant's) car. Defendant responded that he had smoked marijuana earlier. Batterson then asked how long ago, and Defendant admitted "about an hour ago." Batterson told Defendant he was not being arrested at the time.

As to the first factor, the purpose of the questioning, the Magistrate Judge observed that Batterson was cordial in his interaction and that he wanted to give Defendant an opportunity to explain the smell of his vehicle. (Doc. 52 at 3.) Batterson testified that he likened the question to asking a driver suspected of driving under the influence if he had been drinking. (*Id.*) This type of limited investigatory questioning has a permissible purpose for effecting a *Terry* stop. *See Berkermer*, 468 U.S. at 423 (officer permissibly asked defendant whether he had been using intoxicants). It is permissible for officers to "quickly confirm or dispel . . . suspicion of criminal activity," as Batterson did here through asking about use of marijuana in Defendant's vehicle. *United States v. Wright*, 220 F. App'x 417, 421 (6th Cir. 2007).

As to the second factor, whether the place of the questioning was hostile or coercive, the Magistrate Judge observed that the questioning took place at the side of the road, a public location. (Doc. 52 at 12.) Stops which take place in public locations weigh in favor of being deemed non-custodial. *See Berkermer*, 468 U.S. at 438 (observing that "the typical traffic stop is public" and, thus, non-custodial); *United States v. Wright*, 220 F. App'x 417, 421 (6th Cir. 2007) (interrogation near apartment complex found non-custodial); *Swanson*, 341 F.3d at 529 (interrogation outside shop found non-custodial); *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998) (interrogation in parking lot of restaurant found non-custodial). Indeed, even traffic stops where the defendant is questioned inside an officer's police car have been found non-custodial. *Thomas*, 142 F. App'x at 899-900; *see also California v. Beheler,* 463 U.S. 1121, 1125–26 (1983) (detainee not "in custody" although questioning took place in a police station). Thus, the place of questioning in this case is substantially less coercive or hostile than in cases which have held a detainee was not entitled to a *Miranda* warning. *See Beheler*, 463 U.S. at 1125-26. The Magistrate Judge also observed that Defendant was not handcuffed when Batterson asked the question about marijuana use, nor were any weapons drawn—both observations further indicating the non-custodial nature of the interrogation. *Thomas*, 142 F. App'x at 899-900 (finding lack of handcuffs to weigh against a finding of custody); *United States v. Mitchell*, 161 F. App'x 537, 540 (6th Cir. 2006) (finding lack of weapons drawn to weigh against a finding of custody).

As to the third factor, the length of questioning, the Magistrate Judge observed that the questioning took less than one minute. (Doc. 52 at 12.) Short interrogations are less coercive and weigh in favor of being found non-custodial. *United States v. Panak*, 552 F.3d 462, 466-67 (6th Cir. 2009). Less than one minute is a far shorter period of time than cases in this Circuit finding an interrogation to be non-custodial. *See id.* (finding interrogation between forty-five minutes to

11

an hour non-custodial); *United States v. Crossley*, 224 F.3d 847, 862 (6th Cir. 2000) (finding interrogation less than one hour non-custodial); *Wright*, 220 F. App'x at 421 (finding fifteen-minute interrogation non-custodial).

The Magistrate Judge did acknowledge, on the other hand, that there were five officers present on the scene. (Doc. 52.) She took this into account when considering the totality of the circumstances, as does this Court. In light of the factors previously discussed, however, this Court agrees that it was appropriate to find that this aspect did not change the non-custodial nature of the interrogation.

Defendant stresses before this Court that it is not disputed that Defendant was not free to leave the scene of the traffic stop. (Doc. 56 at 13.) However, as noted above, a person is generally not legally free to leave in the context of a *Terry*-style investigatory detention, at least temporarily. *Thomas*, 142 F. App'x at 899-900. Thus, while this fact has also been considered by the Court to be in Defendant's favor, it cannot be dispositive. If it were, it would logically follow that every *Terry*-style detention would require *Miranda* warnings prior to any interrogation taking place. The Supreme Court has decided that this is not the case. *Berkemer*, 468 U.S. at 439-40. Defendant also argues that he had restrained freedom of movement in that Batterson was conducting a *Terry* frisk of Defendant when Batterson asked him about the marijuana. (Doc. 56 at 14.) The Court of Appeals for the Sixth Circuit, however, has observed that a custodial interrogation does not result merely because police questioning occurs during a pat down. *See Loza v. Mitchell*, 766 F.3d 466, 476-77 (6th Cir. 2014). In all, the Magistrate Judge correctly denied Defendant's motion to suppress his pre-*Miranda* statement.

### 2. Post-*Miranda* Statement at the Traffic Stop

Defendant argues his post-*Miranda* statement at the traffic stop claiming the gun as his should be suppressed because the statement was obtained only as a result of an initial pre-*Miranda* violation. Defendant argues the statement should be considered "fruit of the poisonous tree" evidence from the pre-*Miranda* violation. (Doc. 56 at 15.) However, as discussed above, Defendant's pre-*Miranda* statements should not be suppressed because they were not obtained in violation of the Constitution. Thus, the pre-*Miranda* statements cannot constitute a poisonous tree. Where there is no tree, there is no fruit. Defendant's arguments regarding his post-*Miranda* statements must fail. The Magistrate Judge correctly denied Defendant's motion to suppress his post-*Miranda* statement at the traffic stop.

### 3. Statements Made at Hamilton County Jail

Defendant argues his post-*Miranda* statements made at the Hamilton County Jail should be suppressed as they were obtained in violation of his *Miranda* rights. The Magistrate Judge properly denied Defendant's motion to suppress these statements, as Defendant's initial *Miranda* warning had not gone "stale" by the time of his later interrogation.

After police initially advise an individual of his *Miranda* rights, they are not required to advise him of his *Miranda* rights during each later encounter as a matter of course. *Wyrick v. Fields,* 459 U.S. 42, 48–49 (1982). "The courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." *United States v. White*, 68 F. App'x 535, 537-38 (6th Cir. 2003) (quoting *United States v. Andaverde*, 64 F.3d 1305, 1312 (9th Cir. 1995)). Instead, the Court of Appeals for the Sixth Circuit has applied a totality of the circumstances approach when addressing issues of delay between the reading of a suspect's *Miranda* rights and a later custodial interview. Factors to be considered include:

(1) the time elapsing between arrest and arraignment of the defendant

(2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession

(3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him

(4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and

(5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

*United States v. Weekley*, 130 F.3d 747, 750 (6th Cir. 1997). Supplementary warnings are "only required if the circumstances seriously changed between the initial warnings and the interrogation." *Treesh v. Bagley*, 612 F.3d 424, 432 (6th Cir. 2010).

The Magistrate Judge correctly assessed the above factors in determining that Defendant's advisement of his *Miranda* rights did not go "stale" prior to later questioning at the Hamilton County Jail.

During the interaction, Batterson properly advised Defendant of his *Miranda* rights and Defendant indicated he understood his rights. Defendant then claimed the firearm and identified it, waiving his rights as to those statements. Three hours and thirty-six minutes then passed before Defendant was interrogated at the Hamilton County Jail.

As to the first factor, the amount of time which elapsed, the Magistrate Judge reasonably compared the three hour and thirty-six minute window to case law within the Sixth Circuit as well as cases in sister circuits. (Doc. 52 at 15-16.) The Sixth Circuit has observed that "a number of circuits have ruled that re-warning is not required simply because time has elapsed." *Treesh*, 612 F.3d at 423. And courts within the Sixth Circuit have also held that *Miranda* warnings can remain effective for lengthy periods of time, even for a matter of days. *See United States v. White*, 68 F.

14

App'x 535, 537-38 (6th Cir. 2003) (three-day break permissible when defendant requested time to think and there was no other evidence of coercion or leniency); *United States v. McNeil*, 106 F. App'x 294, 301 (6th Cir. 2004) (one-day break permissible when defendant was advised of rights three times on day of arrest); *United States v. Walker*, No. 15-20262, 2016 WL 369687, at 10 (E.D. Mich. Feb. 1, 2016) (eight-hour break permissible where defendant remained in jail but was interrogated by different officers); *Taylor v. Ludwick*, No. 2:08-cv-11823, 2009 WL 3462542, at *7 (E.D. Mich. Oct. 22, 2009) (four and one-half hour break permissible where defendant was interrogated by same officers). On the other hand, courts have granted motions to suppress when lengthy periods of time are combined with other factors indicating that the defendant may have been unaware of his rights. *See United States v. Morris*, No. 2:13-cr-86(1), 2013 WL 3867836, at *3 (S.D. Ohio, Jul. 25, 2013) (four-day break impermissible when defendant was moved twice and substance and duration of interviews significantly differed); *United States v. Jones*, 147 F. Supp. 2d 752, 761-62 (E.D. Mich. 2001) (eighteen-hour break impermissible when there was an interruption in continuity of interrogation, change of location, and change of interrogator). Defendant's three hour and thirty-six minute break between his initial *Miranda* warning and subsequent interrogation is significantly shorter than the periods of time analyzed in cases which granted suppression motions. The Magistrate Judge also observed that the break was not strategic given the unavailability of the interview room at the time. (Doc. 52 at 17.)

As to the second factor, whether defendant knew the nature of the offense with which he was charged, the facts indicate Defendant knew he was charged with unlawful possession of a firearm, and that the questions asked of him at the jail were largely derived from a CPD gun questionnaire. In addition, the Magistrate Judge observed that the topics covered during the interrogation at the traffic stop and at the booking room remained fairly consistent. Batterson also

15

informed Defendant at the traffic stop that the two would be talking again. All of these facts weigh in favor of finding the advisement did not go stale.

As to the third factor, whether or not the defendant was advised or knew that he was not required to make any statement, the Magistrate Judge addressed facts indicating that Defendant was familiar with the criminal justice system, as well as his general awareness of his right to refuse to answer questions or attain a lawyer. (Doc. 52 at 17.) Defendant had been previously arrested on weapons and narcotics charges and was not unfamiliar with the criminal justice system—indeed he asked Batterson if the CPD form Batterson used was a new one. In addition, Defendant advised his passengers that he had claimed the gun as his and that they would need a lawyer. During the interrogation, Defendant did in fact exercise his right to refuse to answer some questions, such as from whom he got the gun. These facts all indicate that Defendant knew he was not required to make any statement to Batterson, and thus also indicate that Defendant's *Miranda* advisement had not gone stale.

The Magistrate Judge also observed that nothing significant happened in the interval between the *Miranda* warnings and the interrogation to cause Defendant to be unable to fully comprehend the effect of an exercise or waiver of his *Miranda* rights. While the location of the interrogation changed, there was continuity in that Batterson both gave the *Miranda* advisement and conducted the interrogation, and Batterson remained with Defendant throughout the night of the stop.

Defendant argues Batterson's framing of the interrogation as necessary to filling out a "form" was misleading to Defendant, especially when considered in light of Defendant's low intellectual functioning. In addition, Defendant was not reminded of his right to assistance of counsel, nor was counsel present, the fourth and fifth factors to be considered. Defendant's

arguments have been fully considered by this Court under the totality of the circumstances. The fact that Defendant directly refused to answer some questions during the interrogation itself offers more persuasive evidence of Defendant's mental state and awareness of his *Miranda* rights during the time period in question. Considering the totality of the circumstances, the Magistrate Judge properly denied Defendant's motion to suppress Defendant's statements at the Hamilton County Jail.

>     **C.**     **Search of the Vehicle**

Defendant argues that the warrantless search of his vehicle was not supported by the probable cause required by the Fourth Amendment and that evidence found in the vehicle should be suppressed. The Magistrate Judge properly denied Defendant's motion to suppress these statements, as the search was supported by probable cause.

The Fourth Amendment provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As a result of this provision, police are generally required to attain a search warrant prior to conducting a search. *California v. Carney*, 471 U.S. 386, 390-91 (1985). However, there is a long-standing exception to this requirement for the search of vehicles where officers have "probable cause" of criminal activity. *Carroll v. United States*, 267 U.S. 132, 153 (1925). The test for probable cause is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

An officer's detection of the smell of marijuana in an automobile can, by itself, establish probable cause for a search. *United States v. Banks*, 684 F. App'x 531, 535-36 (6th Cir. 2017); *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004) (probable cause provided when officers

detected smell of marijuana coming from vehicle); *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) (same).

Here, the Magistrate Judge found Batterson credible as to his testimony that he smelled marijuana coming from Defendant's vehicle upon his initial interaction with Defendant. (Doc. 52 at 19.) This Court finds no reason to question this credibility determination, especially in light of the fact that marijuana was found in the vehicle and Defendant admitted to being a frequent user of marijuana. Thus, there was probable cause to support the warrantless search of Defendant's vehicle, and Defendant's motion to suppress the search was properly denied.

It should also be noted that the Magistrate Judge found that the narcotics canine alerted to the presence of an odor of narcotics in the vehicle, providing independent grounds for probable cause for the warrantless search. (Doc. 52 at 20.) Despite the parties' dispute over whether the canine alerted, this Court finds no reason to question this finding. Defendant's argument that the lack of a canine alert defeats probable cause established via smell need not be addressed.

## IV. CONCLUSION

For the forgoing reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Doc. 52). Defendant's motion to suppress (Doc. 41) will be **DENIED**.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**